**4**

LEONARD K. WELSH CSB NO. 097954
LAW OFFICES OF LEONARD K. WELSH
4550 California Avenue, Second Floor
Bakersfield, CA 93309
Telephone: (661) 328-5328
Facsimile: (661) 760-9900
Email: lwelsh@lkwelshlaw.com
Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>B & L EQUIPMENT RENTALS, INC.,<br><br>Debtor-in-Possession. | Case No. 15-14685-B-11<br>Chapter 11<br>DC No. LKW-1<br><br>Initial Hearing Date: December 17, 2015<br>Initial Hearing Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>           2500 Tulare Street, Fifth Floor<br>Judge: Honorable Rene Lastreto, II |

### DECLARATION OF TAMMY BROWN IN SUPPORT OF MOTION FOR ORDER APPROVING STIPULATION RE: DEBTOR'S USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

I, TAMMY BROWN, declare:

1. I am the Controller of B & L EQUIPMENT RENTALS, INC. ("Debtor"). I am over the age of eighteen years. I have knowledge of the information set forth herein and base the statements made in this Declaration on information available to me and my belief.

2. Debtor filed a Voluntary Petition Under Chapter 11 on November 30, 2015. No trustee has been appointed or is serving in Debtor's Chapter 11 case and Debtor is a "debtor-in-possession" as that term has been explained to me by Debtor's attorney.

3. Debtor owns and operates an oilfield service business. Debtor was incorporated in July 1990 and Debtor conducts business in four states – California, Texas, Nevada, and Colorado. Debtor's business generated gross income of $30,513,043.00 in 2013, $36,345,567.00 in 2014, and $17,995,569.00 from January 1 through November 30, 2015.

1

Debtor employs 93 people and Debtor expects its business to be profitable during the term of its Chapter 11 case. Lawrence F. Jenkins is Debtor's President and Chief Executive Officer and I am Debtor's Controller and Chief Financial Officer. Mr. Jenkins has more than 46 years of experience in the petroleum business and Debtor's management is qualified to lead Debtor's business operations and reorganization efforts.

4. Debtor incurred debt in the ordinary course of its business before it filed its Chapter 11 case according to Debtor's Schedules of Assets and Liabilities on file herein. This debt included secured claims of $3,405,594.89, priority unsecured claims of $0.00, and general unsecured claims of $1,620,740.00. Debtor's secured claims included $1,950,337.31 owed to the Bank of America ("the Bank") as described in the Stipulation Re: Debtor's Use of Cash Collateral and Adequate Protection Between Debtor and the Bank ("the Stipulation"). A copy of the Stipulation is included in the <u>Exhibits to Motion for Order Approving Stipulation Re: Debtor's Use of Cash Collateral and Adequate Protection</u> ("the <u>Exhibits</u>") as <u>Exhibit</u> "A".

5. $456,125.92 of the debt owed to the Bank is a Line of Credit secured by a lien against all of the Debtor's personal property including Debtor's prepetition cash on hand, money on deposit, and accounts receivable ("the Cash Collateral"). Copies of the UCC Financing Statements filed by or for the Bank are included in the <u>Exhibits</u> as Exhibits "B", "C", and "D". The balance of the debt owed to the Bank represents claims secured by liens against vehicles or specifically identified pieces of equipment used in Debtor's business.

6. Debtor's assets had a value of $17,144,907.68 when Debtor filed its Voluntary Petition including cash on hand, money on deposit, and accounts receivable totaling $2,668,999.18.

7. Debtor was sued by a class of employees and former employees ("the Class Claimants") in February 2014 for claims associated with wage and labor law violations.

Debtor denied any liability associated with the claims made against it in the lawsuit. However, Debtor determined that it was in its best interest to resolve its dispute with the employees and former employees without trial. Therefore, Debtor and the Class Claimants entered into a Joint Stipulation of Settlement and Release in March 2015 ("the Settlement Agreement"). The Settlement Agreement liquidated the claims against Debtor at $1,500,000.00 and provided for entry of a Judgment against Debtors and payment of the $1,500,000.00 to the Class Claimants due on or about November 25, 2015.

8. Debtor believed in March 2015 that it would be able to make the payment of $1,500,000.00 to the Class Claimants required by the Settlement Agreement without jeopardizing its business and ability to pay other creditors. However, based on declines in the petroleum industry and a "slow down" in Debtor's business, Debtor determined in October and November 2015 that it could not make the payment of $1,500,000.00 to the Class Claimants without jeopardizing its business and ability to pay other creditors.

9. Debtor filed its Chapter 11 case in order to give Debtor a vehicle under which it could reorganize its business and financial affairs and repay all of the debt owed to its creditors over time including the debt owed to the Bank and the Class Claimants.

10. The Bank has consented to Debtor using its cash collateral from December 1, 2015 to January 31, 2016 through the Stipulation. Debtor will make adequate protection payments to the Bank and give a replacement lien in its post-petition cash on hand, money on deposit, and accounts receivable to the Bank as described in the Stipulation. Debtor's attorney has informed me that it is necessary for Debtor to make the adequate protection payments and grant a replacement lien to the Bank in order to protect the Bank's interests.

11. Debtor intends to file a Plan of Reorganization and operate its business as a part of its Chapter 11 case. In the interim, Debtor needs to use the Cash Collateral to pay expenses

incurred by it in the normal course of its business. The Bank has agreed to permit Debtor to use the Cash Collateral through January 31, 2016 on the terms described in the Stipulation. Additionally, I am informed that the Bank has agreed to consider consenting to Debtor using more cash collateral after January 31, 2016.

12. <u>Initial Use</u>. The Stipulation provides that Debtor will be authorized to use $1,774,250.00 in cash collateral from December 1, 2015 through January 31, 2015 consistent with a Budget included in the Stipulation ("the Budget"). A copy of the Budget is included in the <u>Exhibits</u> as Exhibit "E". Debtor's use of the Cash Collateral from December 1, 2015 through January 31, 2016 will permit Debtor to operate its business and continue its reorganization efforts without interruption or delays.

13. <u>Urgent Need for Cash Collateral</u>. Debtor will not be able to operate its business or conduct its reorganization efforts without use of the Cash Collateral. I believe that each item included in the Budget is necessary to the continued operation of Debtor's business and I am informed that the Budget has been reviewed and approved by the Bank.

14. <u>Further Use of Cash Collateral</u>. Debtor will seek the Bank's consent to use cash collateral after January 31, 2016 and will seek the Bankruptcy Court's approval of the Bank's consent to its further use of cash collateral if such consent is given. Debtor will file a Motion for Authority to Use Cash Collateral if the Bank will not consent to Debtor's use of cash collateral after January 31, 2016.

15. The foregoing statements are within my personal knowledge and I can testify competently thereof if called as a witness.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this ___11th___ day of December 2015, at Bakersfield, California.

/s/ Tammy Brown
TAMMY BROWN, Controller
B & L EQUIPMENT RENTALS, INC